IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 OCT -4  PM 1:39
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
            DEPUTY

EASTMAN CHEMICAL COMPANY,
            Plaintiff,

-vs-                                                                                    Case No. A-12-CA-057-SS

PLASTIPURE, INC. and CERTICHEM, INC.,
            Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Eastman Chemical Company's Motion for Attorney Fees [#222], Defendants PlastiPure, Inc. and CertiChem, Inc.'s Response [#225], and Eastman's Reply [#232]; the parties' Agreed Motion for Leave to File Sealed Documents [#223];[1] and Eastman's Bill of Costs [#224] and Defendants' Objections [#227] thereto. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

The Court detailed the history of this Lanham Act false advertising case in considerable detail in its previous order granting a final judgment in favor of Eastman. *See* Order of Aug. 30, 2013 [#219]. In brief, Eastman sued Defendants for false advertising and various state-law claims, alleging Defendants had made false and misleading statements about an Eastman product, a plastic resin called Tritan. Specifically, the parties disputed whether Tritan is capable of leaching estrogenically active chemicals when stressed in particular ways. After a full trial on the merits, a jury returned a

---

[1] The Agreed Motion [#223] is GRANTED.

complete verdict in favor of Eastman. This Court previously entered judgment in favor of Eastman granting certain injunctive relief and directing Eastman to submit a motion for attorney's fees and a bill of costs. Eastman's motion now seeks approximately $3.8 million in fees and expenses.

## Analysis

### I. Attorney's Fees under the Lanham Act—Legal Standard

"Under our judicial system, the prevailing party normally may not recover attorneys' fees absent statutory authority." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992). The Lanham Act provides the necessary statutory authority for an award of reasonable attorney's fees to the prevailing party "in exceptional cases." 15 U.S.C. § 1117; *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). "An exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate, or willful." *Seven-Up*, 86 F.3d at 1390 (internal quotation marks omitted). The prevailing party has the burden to show, by clear and convincing evidence, "'a high degree of culpability on the part of the infringer, for example, bad faith or fraud,' and a few cases have gone so far as to require 'very egregious conduct.'" *Id.* (quoting *Tex. Pig Stands v. Hard Rock Cafe Int'l*, 951 F.2d 684, 696–97 & n.25 (5th Cir. 1992); *Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir. 1992)). "The determination as to whether a case is exceptional is left to the sound discretion of the trial court." *Id.*

### II. Application

Eastman asks the Court to find this case is exceptional "primarily based upon Defendants' willful and intentional misconduct and their litigation tactics and strategies." Mot. Att'y Fees [#222], at 4. In considering these arguments, the Court's task is to "examin[e] all the facts and circumstances" and decide whether the case is exceptional. *CJC Holdings*, 979 F.2d at 65. For the

reasons explained below, the Court finds, based upon "'an independent examination of the testimony and other evidence presented at trial, including through observation of the witnesses' words, demeanor, and candor or lack thereof,'" as well as the findings of the jury after trial, this case is not exceptional. *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 402 (5th Cir. 2008) (quoting and affirming this Court's order awarding $96,304.50 in attorney's fees).

"[T]his case was ultimately nothing more than a battle of the experts in which the jury was properly tasked with crowning a victor." Order of Aug. 30, 2013 [#219], at 5. As this Court previously explained,

> the jury heard days of contradictory testimony from world-class scientists as well as lay witnesses. At various times, each side presented compelling arguments on small sub-issues throughout the case. At other times, each side's witnesses fell flat. The jury watched attentively and took notes, and no doubt made numerous judgments about the credibility of the witnesses and the importance to assign to each piece of evidence. Faced with so much contradictory evidence, *virtually any verdict the jury reached would have been sustainable, as reasonable jurors could disagree about countless facts, inferences, and conclusions.* . . . A different jury on a different day may have reached a different conclusion, but that does not diminish the validity of the jury's verdict in this case.

*Id.* at 8, 11 (emphasis added).

Eastman places significant weight on the jury's finding of willfulness. Although the jury in this case did find Defendants' conduct was willful, "[a] jury finding of willfulness does not bind the trial court in determining whether this case is 'exceptional'; it may, however, serve as a guide." *Tex. Pig Stands*, 951 F.2d at 697 (footnote omitted); *see also Clearline Technologies Ltd. v. Cooper B-Line, Inc.*, No. H-11-1420, 2013 WL 2422581, at *22 (S.D. Tex. June 3, 2013) (holding a case was not exceptional despite a jury finding of willful trademark infringement). The reason for this rule is the burden of proof: the jury was asked to find willful conduct by a preponderance of the evidence,

whereas the same finding must be made by clear and convincing evidence to justify an award of attorney's fees. *See Clearline*, 2013 WL 2422581, at *22 ("Although the jury was presented with sufficient evidence to conclude that the infringement was willful by a preponderance standard, . . . the Court does not find that Cooper infringed willfully by a clear and convincing standard." (citing *Seven-Up*, 86 F.3d at 1390)).

This was a case of highly speculative liability. The jurors were required to sift through complex scientific testimony and determine if particular statements made by Defendants were false or misleading. Although the jury found those statements were "more likely than not"[2] false and misleading, the Court would have sustained the opposite finding without difficulty. From the evidence presented at trial, reasonable jurors could have found either side's scientific testing to be flawed. The jury ultimately sided with Eastman, but was by no means required to do so based on the record at trial.

Defendants' belief in the validity of the testing and data underlying their statements about Tritan was central to Defendants' defense theory. "A district court normally should not find a case exceptional where the party presents what it in good faith believes may be a legitimate defense." *CJC Holdings*, 979 F.2d at 66. Each side in this case tested different products (Tritan co-polymers versus finished Tritan products or Tritan resin) under different stresses using different tests with different results. The evidence at trial consisted primarily of experts paid by each side testifying about the soundness of their own results and the weaknesses of their opponents' results. All of these experts testified without any objection to their qualifications to offer such scientific opinions. Truth is a

---

[2] *See* Jury Instructions [#195], at 1 ("A preponderance of the evidence means the amount of evidence that persuades you a claim is more likely true than not true.").

legitimate defense to accusations of false advertising, and Defendants presented considerable evidence demonstrating their good faith basis for believing the statements they made were true.[3]

Courts which have declared cases exceptional have been faced with far more egregious facts than were adduced at trial in this case. For example, the Fifth Circuit affirmed an award of attorney's fees under the Lanham Act where a Mexican restaurant adopted a restaurant decor and style nearly identical to that of a competitor with the hope of confusing customers into believing the restaurants were related. *See Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117, 1127–28 (5th Cir. 1991). By contrast, the Fifth Circuit found a case challenging the Hard Rock Cafe's use of the protectable term "pig sandwich" to describe a barbecued pork dish was not exceptional, even though the jury had found Hard Rock Cafe acted willfully. *Tex. Pig Stands*, 951 F.2d at 697–98.

Relevant to both decisions were the existence and legitimacy of the defense. Two Pesos had basically none, as it had simply stolen its competitor's design. *See Taco Cabana*, 932 F.2d at 1128 (noting "the evidence of brazen imitation and rapid market foreclosure," as well as Two Pesos's failure to differentiate its trade dress from Taco Cabana's in any meaningful way). Hard Rock Cafe believed it had a right to use the generic term "pig sandwich" to describe its porcine offering. *Tex. Pig Stands*, 951 F.2d at 688. Juries rejected both defenses, but the Hard Rock Cafe's more reasonable position contributed to the Fifth Circuit's conclusion that case was not exceptional. Here, Defendants—two companies whose founder wrote the scientific paper inspiring the advertisements and additional research into Tritan—presented substantial evidence supporting the truth of their

---

[3] The one possible exception is the idea Tritan itself is harmful to humans. No witness was willing to testify Tritan is actually harmful, as the testing required to definitively reach such a conclusion has not been performed. However, when considered in light of all the facts and circumstances of this case, this single exception does not transform the lawsuit from unexceptional to exceptional.

claims. The jury's rejection of Defendants' defense theory is not dispositive of the attorney's fees inquiry. *See id.* at 697 (finding the case not exceptional even though the jury found Hard Rock Cafe's use of the "pig sandwich" term was likely to confuse consumers); *see also Clearline*, 2013 WL 2422581, at *22 (concluding the jury properly found willful infringement by a preponderance standard, but evidence was insufficient to support the same finding by clear and convincing evidence standard).

In addition to the speculative nature of liability, Eastman's complete inability to prove any damages at trial also suggests this case is not exceptional. *See CJC Holdings*, 979 F.2d at 66 (explaining the district court "legitimately could find the case unexceptional, despite deliberate copying," where "CJC did not prove any damages"); *Tex. Pig Stands*, 951 F.2d at 697 n.23 (lack of damages "is an important circumstance to consider"); *Moore Bus. Forms*, 960 F.2d at 492 (finding case not exceptional where, among other things, "there [was] no indication that Moore suffered actual economic damages from Ryu's infringing activities"). Eastman's opening argument to the jury indicated Eastman would not be seeking any money damages in this case. Eastman's counsel later suggested he had simply spoken inartfully, but Eastman ultimately withdrew its request to have the Court submit a damages question to the jury. As a result, the jury did not consider, much less award, money damages.

Although the jury did not consider the possibility of money damages, this Court did, and may do so in reviewing the facts and circumstances of this case. Eastman was unable to produce any evidence of actual damages at trial, such as lost sales, sufficient to support a non-speculative jury award. The only hard numbers Eastman could generate were the expenses it paid to an advertising agency to conduct "corrective advertising," but there was no evidence other than Eastman's say-so

this advertising was necessary, corrective, or actually in response to actions taken by Defendants. Additionally, Eastman offered the testimony of an alleged expert on the market effects of Defendants' statements, such as whether customers were confused. This expert openly admitted on the stand she did not survey Eastman's actual customers, who are manufacturers of plastic products, but instead surveyed individual consumers. Her credibility was seriously called into question when she was unable to explain basic details of her survey methodology, such as why she excluded people under a certain arbitrary income level, why she did not calculate the appropriate level of statistical significance using the industry standard method (the "T-Test"), and what she meant by statistical significance.[4] Eastman thus declined to ask for damages from the jury, and its failure to either request or prove any damages supports this Court's decision to not deem this case exceptional.

Eastman also asks this Court to take into consideration Defendants' litigation conduct—in other words, the actions of Defendants' counsel in defending this case. The Fifth Circuit has not expressly endorsed the consideration of litigation conduct, though some other courts have done so. *See Secureacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000) (noting the Lanham Act "does not preclude using litigating conduct as a basis for the fee" award).[5] As the Fifth Circuit has not embraced this position, the Court believes the safer course is to rely on the actual evidence rather than the squabblings of the attorneys who represented these parties.

---

[4] Her credibility was also called into question by her expert witness fees, which totaled more than $65,000.00 for a basic Internet survey.

[5] Eastman cites one Texas district court case which it contends considered litigation conduct in the context of § 1117(a). *See Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 983–84 (S.D. Tex. 1997). But in *Neles-Jamesbury*, even though the plaintiffs *asked* the Court to consider the defendants' litigation conduct, the Court ultimately found the case to be exceptional based solely on the evidence adduced at trial. *Id.* at 984.

However, in the alternative, the Court notes if it were to consider the parties' litigation conduct, it still would not find this case exceptional. Eastman faults Defendants for producing documents too slowly, designating too many witnesses and exhibits, and filing unsuccessful dispositive motions. The Court finds nothing exceptional about petty discovery disputes and run-of-the-mill litigation tactics, particularly where both sides have willingly run up their fees to the tune of several million dollars. For example, both sides filed handfuls of pre-trial *Daubert* motions, but when the issues were forced to trial, neither side raised a single *Daubert* objection to any offered expert witness. And Eastman can hardly complain about burdensome discovery while deposing several of Defendants' witnesses two, three, or four times *each*.[6]

In truth, there is no "vexatious litigation conduct" here. *See id.* at 281–83 (finding such conduct in a case involving "a sweeping attempt to beat a financially weaker opponent through the use of vexatious litigation"). The prosecution of this case makes clear neither side was sure what this case actually was until the trial was over. Pleaded causes of action, defenses, and other issues melted away as the actual evidence failed to provide any support for the parties' asserted positions. Only a few months before a trial in which Eastman expressly declined to even *seek* money damages (because it had no sufficient evidence), Eastman's counsel made a "settlement offer" demanding north of $5,000,000.00 from Defendants, in addition to injunctive and other relief. In the face of such an offer, Defendants had at least five million good reasons to proceed to trial, as even a total loss at the hands of the jury left Defendants in a better position than settling this case would have. The

---

[6] Of course, Eastman blames Defendants for forcing them to repeatedly depose these witnesses, who the parties also (for the most part) called at trial.

Court thus sees absolutely no basis for concluding this case is exceptional due in any part to the conduct of the parties' attorneys.[7]

### III. Costs

### A. Legal Standard

Regardless of whether a case is deemed exceptional, the Lanham Act states a successful plaintiff "shall be entitled" to recover both actual damages and "the costs of the action." 15 U.S.C. § 1117(a). The phrase "the costs of the action" is not defined, but courts have generally interpreted recoverable costs to be limited to those costs enumerated in 28 U.S.C. § 1920. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 286 U.S. 714, 720 & n.15 (1967); *Coach Inc. v. Sassy Couture*, No. SA-10-CV-601-XR, 2012 WL 162366, at *13 (W.D. Tex. Jan. 19, 2012). Section 1920 lists the following allowable costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;

---

[7] The Court is, of course, constrained by the technical legal definition ascribed to the Lanham Act's use of the word "exceptional." Considering more common meanings of the term, the Court believes this case is in many ways exceptional. *See, e.g.*, THE AMERICAN HERITAGE COLLEGE DICTIONARY 486 (4th ed. 2002) (defining "exceptional" as "Being an exception; uncommon"). It is truly an exceptional case in which attorneys spend more than $7 million litigating a one-issue case with no damages. Even more exceptional is a case where, after a trial on the merits in which the jury resolves the single issue in fewer than four hours of deliberation, the parties file over 185 pages (*excluding* exhibits, and with multiple responses and replies still outstanding) of post-trial motions. All this is to say nothing of the multiple discovery disputes, which surely served each side's clients well. *E.g.*, Order of Mar. 14, 2013 [#75], at 2 (lamenting the predictable opposition to a request for a four day extension of time to designate experts "in this needlessly contentious case" and "the lack of any professional reason for Defendants to be opposed"). And who could forget the parties' generous decision to extend the dispositive motions deadline by five weeks without seeking leave or even giving the Court notice, in violation of this Court's rules? *See* Order of June 4, 2013 [#133], at 3–4 (denying summary judgment motions as untimely for this reason); *see also id.* at 5–6 (denying Defendants' request to file their third amended answers and counterclaims ten months after the amended pleadings deadline chosen by the parties). Truth be told, this case has been, and continues to be, an exceptional example of precisely how *not* to try a lawsuit.

    (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

    (5) Docket fees under section 1923 of this title;

    (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Federal Rule of Civil Procedure 54(d) also governs costs, and "contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). Allowable costs under Rule 54(d) are generally those delineated in § 1920, unless a particular statute authorizes other costs. *W. Wind. Africa Line, Ltd. v. Corpus Christi Marine Servs. Co.*, 834 F.2d 1234, 1236 (5th Cir. 1988) (Rule 54(d) "allows trial courts to refuse to tax costs otherwise allowable, but it does not give them the power to tax items not elsewhere enumerated"). The party seeking to recover costs bears the burden of proving the amount of the costs and their necessity. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).

**B.**    **Application**

Eastman's Bill of Costs [#224] requests an award of $318,745.73 in costs. The Bill of Costs is supported by an affidavit from Eastman's counsel and various invoices for the requested costs. Defendants object to a number of Eastman's requests, which the Court will take up in turn.

**1.**    **Subpoena Service Fees**

Eastman used a private process server to serve fifty-seven subpoenas in this case, and seeks to recover costs in the amount the United States Marshal's Service would have charged for service of the same subpoenas. "Because private process server fees are not specifically enumerated in

§ 1920, which encompasses only fees paid to the United States Marshal for service of process, and because there was nothing exceptional about the parties or the nature of this case, the Court finds the private process server fees are not properly taxable as costs." *Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 585 (W.D. Tex. 2010) (Sparks, J.) (citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997)). The Court therefore reduces Eastman's bill of costs by $3,135.00, the amount of costs taxed for subpoena service fees at the Marshal's rate.

### 2.     Transcript Fees

Eastman seeks $175,052.37 in "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" pursuant to § 1920(2). This figure is primarily derived from paper transcripts and videos for Eastman's fifty-two depositions. Defendants object to a variety of these requested costs, for a variety of reasons. In general, the Court finds Eastman's deposition transcripts were "necessarily obtained for use in the case." Although the raw number of depositions is somewhat excessive given repeated depositions of many witnesses, the history of this case suggests Eastman is not wholly to blame, and most of these witnesses were experts called at trial. It was also both reasonable and necessary for Eastman to obtain daily trial transcripts, as the trial in this case involved complex expert testimony on a daily basis. The Court does, however, make the following adjustments to Eastman's claimed transcript costs.

First, the Court declines to allow Eastman to tax as costs both paper transcripts and video recordings of the same depositions where the videos were not used at trial. *See Structural Metals, Inc. v. S & C Elec. Co.*, No. SA-09-CV-984-XR, 2013 WL 3790450, at *4 (W.D. Tex. July 19, 2013) (declining to allow recovery of both paper transcripts and videos); *but see Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 805 (E.D. Tex. 2012) (allowing recovery of both). This removes

$36,605.50 from Eastman's total. Second, the Court reduces Eastman's costs by $570.55, which reflects costs of transcripts from hearings held by the Court prior to trial. *See Structural Metals*, 2013 WL 3790450, at *2 (declining to award such costs because the prevailing party "had counsel available to take notes" at pretrial hearings). The Court therefore reduces Eastman's Bill of Costs by $37,176.05.

3. **Electronic Database Fees**

Citing no particular portion of § 1920, Eastman seeks to recover $77,811.21 "for the cost of populating and maintaining an electronic database" of discovery materials. Bill of Costs [#224-1], Ex. A (Brown Aff.) ¶ 7. The bulk of these expenses come from "processing" and "hosting" fees charged by third-party providers for the creation and management of the e-discovery database. *See id.*, Ex. A-6 (database invoices reflecting significant charges for "hosting," "user licenses," and "processing"). Section 1920 allows parties to recover costs for "printing" and "making copies," neither of which are directly analogous to processing or hosting fees paid to third-party providers to digitize large quantities of print materials or to compile and convert electronic records. *See Structural Metals*, 2013 WL 3790450, at *8–9 (declining to award $13,521.48 in e-discovery costs); *Eolas*, 891 F. Supp. 2d at 806–07 (declining to award more than $2 million in e-discovery costs because § 1920 "is not so broad as to cover general electronic discovery costs"). The Court therefore reduces Eastman's Bill of Costs by $77,811.21.

4. **Exemplification and Copy Fees**

Pursuant to § 1920(4), Eastman seeks to recover $12,456.13 in copying costs for its trial exhibits. Brown Aff. ¶ 9. Eastman also seeks $40,950.00 in costs for "electronic copies made for trial

and the demonstratives reflecting such trial exhibits for the jury's review, and the synchronization of deposition video transcripts for use at trial." *Id.* ¶ 10.

Defendants object to the copying costs because the invoices do not specify what is being copied. "Although prevailing parties do not have to justify every single photocopying cost, they do have to provide enough information for the Court [to be] able to make a reasonable determination of necessity." *Honestech*, 725 F. Supp. 2d at 584. Here, Eastman's invoices simply denote black-and-white or color copies were made; no further information can be gleaned from the invoices. Eastman's supporting affidavit recognizes the difficulty this poses and thus requests approximately one quarter of Eastman's total copying fees, but the evidence of these costs is simply too sparse for the Court to determine whether the percentage counsel chose accurately represents the costs of Eastman's trial-related copies or whether those copies were necessary. *See id.* (denying photocopy expenses where counsel's affidavit made "the blanket statement that 10% of the black-and-white copies and 40% of the color copies were necessarily obtained for use in the case"). The Court therefore reduces Eastman's Bill of Costs by $12,456.13.

Defendants also object to the demonstrative costs. Most of Eastman's claimed demonstrative costs are for a third-party company's video editing services synchronizing deposition transcripts with video depositions. The Court finds such expenses were not "necessarily obtained" for use in trial, as the vast majority of the deponents were called at trial by either Eastman or Defendants (or both), and the decision by counsel to have synchronized video depositions of those witnesses available to use was purely for counsel's convenience. Alternatively, the costs of producing trial exhibits are not recoverable absent preapproval. *Honestech*, 725 F. Supp. 2d at 584–85 (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 335 (5th Cir. 1995) ("Absent pretrial approval of the exhibits,

however, a party may not later request taxation of the production costs to its opponent.")). The Court therefore reduces Eastman's Bill of Costs by $40,950.00.

5. **Total Costs**

Finally, Defendants ask this Court to decline to award any costs on equitable grounds. While the Fifth Circuit has contemplated such things, it has not openly endorsed any specific criteria for doing so. *See Pacheco*, 448 F.3d at 794 (discussing various factors other courts have used, in conjunction with the losing party's good faith, to deny costs, but expressly declining to decide "whether any of these is a sufficient reason to deny costs"). Moreover, the Fifth Circuit has embraced Rule 54(d)'s strong presumption in favor of awarding costs, characterizing the denial of costs as, in essence, a penalty. *Id.* at 793–94. The traditional view recognizes "liability for costs is a normal incident of defeat," and therefore the Court declines to deny Eastman all costs on equitable grounds. *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).

After the Court's denied costs are subtracted, Eastman's final award of costs tallies $147,217.34.

## Conclusion

The Court finds this case is not exceptional, and therefore Eastman is not entitled to a discretionary award of attorney's fees under the Lanham Act. Eastman is entitled to its recoverable costs, and the Court will award them as noted above.

Accordingly,

IT IS ORDERED that the parties' Agreed Motion for Leave to File Sealed Documents [#223] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff Eastman Chemical Company's Motion for Attorney Fees [#222] is DENIED;

IT IS FURTHER ORDERED that Plaintiff Eastman Chemical Company's Bill of Costs [#224] is PERMITTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FINALLY ORDERED that the Clerk SHALL assess costs of suit against Defendants PlastiPure, Inc. and CertiChem, Inc., in accordance with this order, in the total amount of ONE HUNDRED FORTY-SEVEN THOUSAND TWO HUNDRED SEVENTEEN DOLLARS AND THIRTY-FOUR CENTS ($147,217.34).

SIGNED this the 4th day of October 2013.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE